IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARNER BROS. RECORDS INC., *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JEREMY WALKER, )<br>)<br>Defendant. )<br>)<br>) | C.A. No. 07-287 Erie<br>District Judge McLaughlin |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      This matter is before the Court upon Plaintiffs' motion for summary judgment. The matter is fully briefed and is now ripe for disposition. For the reasons which follow, Plaintiffs' motion will be granted.

**I. BACKGROUND**

      Plaintiffs Warner Brothers Records, Inc., Virgin Records America, Inc., Capital Records, LLC, UMG Recordings, Inc., and Sony BMG Music Entertainment ("Plaintiffs") are recording companies that own or control exclusive rights to copyrighted sound recordings. (Complaint ¶ 11). Collectively, Plaintiffs are the undisputed owners of the copyrights to the following 19 sound recordings relevant to the instant action:[1]

| **Copyright Plaintiff** | **Artist** | **Song Title** | **Album Title** | **SR #** |
|---|---|---|---|---|
| Capital Records | Poison | Unskinny Bop | Flesh and Blood | 119-355 |
| UMG Recordings | 50 Cent | Don't Push Me | Get Rich Or Die Tryin' | 337-801 |

---

[1]    For convenience, the 19 copyrighted works at issue here will be referred to as the "Copyrighted Recordings."

1

| Warner Bros. | A-Ha | Take On Me | Hunting High and Low | 63-603 |
|---|---|---|---|---|
| UMG Recordings | Def Leppard | Pour Some Sugar on Me | Hysteria | 90-420 |
| SONY BMG | Cyndi Lauper | Time After Time | She's So Unusual | 50-827 |
| UMG Recordings | Bon Jovi | Livin' on a Prayer | Slippery When Wet | 71-794 |
| Warner Bros. | Blake Shelton | Some Beach | Some Beach (single) | 359-307 |
| Warner Bros. | My Chemical Romance | Helena | Three Cheers for Sweet Revenge | 360-197 |
| UMG Recordings | Tiffany | Could've Been | Tiffany | 83-157 |
| SONY BMG | Bonnie Tyler | Total Eclipse of the Heart | Total Eclipse of the Heart (single) | 50-640 |
| Warner Bros. | The Pretenders | I'll Stand By You | Last Of The Independents | 191-975 |
| Virgin Records | UB40 | Red Red Wine | Labour of Love | 49-244 |
| Capital Records | Billy Idol | Rebel Yell | Rebel Yell | 52-131 |
| UMG Recordings | Archie Eversole | We Ready | Ride Wit Me Dirty South Style | 316-541 |
| SONY BMG | Bruce Springsteen | Hungry Heart | The River | 25-235 |
| UMG Recordings | The Police | Every Breath You Take | Synchronicity | 44-862 |
| Capital Records | Poison | I Want Action | Look What the Cat Dragged In | 82-349 |
| Capital Records | Poison | Every rose has its thorn | Open Up & Say....Ahh! | 93-741 |
| SONY BMG | Michael Bolton | How Can We Be Lovers | Soul Provider | 106-829 |
| | | | | |

(Complaint, Ex. 3).

In an effort to protect their copyrighted works from being illegally downloaded and distributed across the internet, Plaintiffs employ a third party service, MediaSentry, to attempt to detect possible copyright violations. (Declaration of Chris Connelly, ¶ 2-3) ("Connelly Decl."). Many of these violations occur using peer-to-peer ("P2P") file sharing networks in which individual internet users can search for, download and transfer exact copies of files (including sound recordings) from one computer to another over the internet.

On March 6, 2007 at 11:28 p.m. EST, MediaSentry detected an individual identified with the username "walker15" using a peer-to-peer file sharing program known as Ares. (Connelly Decl. ¶ 9). At the time of the detection, approximately 285 digital audio files, including the 19 Copyrighted Recordings, were contained in the "shared" folder of walker15's Ares program, meaning that those audio files were available for download and distribution from his computer to other users of the Ares network. (Id.) MediaSentry ascertained that the Internet Protocol ("IP") address of the user identified as "walker15" was 141.195.141.144. Further investigation revealed that Allegheny College was the Internet Service Provider that had assigned that particular IP address. Allegheny College later identified Defendant as the assignee of that IP address. (Plaintiffs' Concise Statement, Ex. 5).

On March 6, 2007, MediaSentry downloaded complete copies of ten of the sound recordings contained in Defendant's shared folder as a sample of the 285 audio files available for download to other Ares users. (Connelly Decl. ¶ 9). MediaSentry also downloaded a complete list of all 285 files in the shared folder on Defendant's computer at that time. (Connelly Decl. ¶ 9). Finally, MediaSentry captured the "User Log" from Defendant's IP address. The User Log is a text file containing all of the contents of the user's shared folder, including the names and sizes of files and additional information about each file referred to as "metadata." (Connelly Decl. ¶ 12). The information contained in the metadata of an audio file may include keywords, comments and identifiers added by an individual other than the copyright owner.[2] Metadata is automatically transferred from one computer to another when the file is downloaded. The UserLog from Defendant's computer indicates that 17 of the 19 Copyrighted Recording files contain keywords and/or descriptions in the metadata that would not have been included in sound recordings and

---

[2] For example, the metadata for the audio file on Defendant's computer of the Bon Jovi song "Livin' on a Prayer" contains the comment "This song I have to say is one of Jons greatest." A comment contained in the metadata for the Bruce Springsteen song "Hungry Heart" reads "this is for the hungry hearted." (See Connelly Decl., Ex C).

compact discs sold through legitimate retail outlets and online sources. (Connelly Decl. ¶ 12; Connelly Decl. Ex. C).

On October 18, 2007, Plaintiffs filed a copyright infringement action seeking damages and injunctive relief as a result of the allegedly unauthorized use of Plaintiffs' sound recordings detected by MediaSentry. Plaintiffs initially filed this action as a "Doe" lawsuit and subsequently amended the Complaint after Defendant's identity was obtained from Allegheny College pursuant to a Rule 45 subpoena. In their Amended Complaint, Plaintiffs request injunctive relief pursuant to 17 U.S.C. §§ 502-503, statutory damages in the amount of $750 per song pursuant to 17 U.S.C. § 504(c), and costs pursuant to 17 U.S.C. § 505.

At his deposition, Defendant testified that the Ares program had been installed on his computer by a friend of his and that he "occasionally" used the program. (Walker Deposition, March 13, 2009, pp. 38, 60-62, 65). Defendant admits that he used Ares to search for and download songs from other Ares users. (Walker Depo., pp. 68-69, 71-72, 76, 81, 84, 93, 96). Defendant did not pay for those downloads. (Walker Depo., p. 93, 96). Defendant acknowledged that he placed music into the shared folder of his Ares program and that, by doing so, he was making that music available to other Ares users for illegal download and distribution, although he was not aware of that at the time. (Walker Depo., pp. 91, 93-96). Defendant admits that he did so without the permission of the owners of the copyrights for those sound recordings. (Walker Depo., p. 95). Defendant further testified that he never added comments or keywords to the metadata of any of his music files and, indeed, had no knowledge of how to do so. (Walker Depo., pp. 41-42).

At all times relevant to this action, Defendant shared a dorm room with various roommates, each of whom had their own computers. (Walker Depo., pp. 9-13, 43). Defendant's computer was located in his bedroom, rather than a common area, but did not have a password or other form of protection designed to restrict access. (Walker Depo., p. 50). Defendant never gave permission to any of his roommates to use his computer and could not recall any specific instance in which anyone other than himself used it. (Walker Depo., pp. 50-51, 56).

The Court has jurisdiction over Plaintiffs' claims of copyright infringement pursuant to 28 U.S.C. §§ 1331, 1338.

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance

- which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### III.  ANALYSIS

    A.    **The Copyright Act**

The Copyright Act of 1976, codified at 17 U.S.C. § 101 et seq., grants the copyright owner of a sound recording the exclusive right to "reproduce the copyrighted work in copies or phonorecords" and "distribute copies or phonorecords of the copyrighted work to the public." 17 U.S.C. § 106(1), (3). To prevail on a claim of copyright infringement, a copyright owner must establish that it owns a valid copyright in the sound recording and that the defendant engaged in unauthorized copying or distribution of those recordings. See, e.g., Fest Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991); Dunn & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3rd Cir. 2002). "Once a plaintiff has proven that he or she owns the copyright on a particular work, and that defendant has infringed upon those 'exclusive rights,' the

defendant is liable for the infringement and this liability is absolute." Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992).

"Innocent intent is generally not a defense to copyright infringement." Williams Electronics v. Artic Int'l, Inc., 685 F.2d 870, 878 (3rd Cir.1982). Thus, a defendant is liable "even for 'innocent' or 'accidental' infringements," see Pinkham, 983 F.2d at 829, and a plaintiff need not demonstrate intent or even knowledge of infringement to prove a copyright claim. See, e.g., Chavez v. Arte Publico Press, 204 F.3d 601, 607 (5th Cir. 2000) ("Copyright infringement actions . . . ordinarily require no showing of intent to infringe."); Pinkham, 983 F.2d at 829 ("The defendant's intent is simply not relevant [to demonstrate copyright infringement]"); Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2nd Cir. 1986) ("In actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability"); Williams, 685 F.2d at 878.

### B. Ownership of the Copyrighted Recordings

Plaintiffs have submitted Certificates of Registration of Copyright for each of the 19 Copyrighted Recordings, demonstrating that Plaintiffs are the owners or licensees of each of those recordings. See Plaintiff's Concise Statement of Material Facts, Ex. 6; see Southco, Inc. v. Kanebridge Corp., 390 F.3d 276, 299 (3rd Cir. 2004) ("A certificate of registration constitutes prima facie evidence of the validity of the copyright and ownership of the registered work . . ."). Defendant does not dispute Plaintiffs' ownership of the Copyrighted Recordings or the validity of the certificates of registration. As such, there is no material issue of fact as to the first element of Plaintiffs' copyright infringement claim.

### C. Unauthorized Reproduction Pursuant to Section 106(1)

As to the second element, Plaintiffs contend that Defendant infringed upon their exclusive right to reproduce their copyrighted sound recordings by using the Ares software to download the Copyrighted Recordings onto his computer. See 17 U.S.C. § 106(1) (granting a copyright owner the exclusive right "to reproduce the copyrighted work in copies or phonorecords."). Courts have

uniformly held that downloading sound recordings on a peer-to-peer network without the authorization of the copyright holder constitutes an unlawful reproduction of the work in violation of § 106(1) of the Copyright Act. See, e.g., BMG Music v. Gonzalez, 430 F.3d 888, 890 (7th Cir. 2005) (affirming summary judgment against a party that downloaded copyrighted sound recordings over a peer-to-peer network); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); UMG Recordings v. Alburger, 2009 WL 3152153, *3 (E.D. Pa. 2009) ("District courts in the Third Circuit (and elsewhere) agree . . . that downloading music from the internet, without paying for it or acquiring any rights to it, is a direct violation of the Copyright Act."); MGM Studios Inc. v. Grokster, Ltd., 259 F.Supp.2d 1029, 1034-35 (C.D. Cal. 2003) (holding that users who download copyrighted music violate the copyright owner's exclusive reproduction right).

In his deposition, Defendant admits that he used Ares to download music from the internet, including the Copyrighted Recordings at issue in this case:

> Q: [D]id you actually use Ares to search for songs? I don't need the specific songs but do you recall actually using the Ares program and typing, searching for any particular song?
>
> A: Yes, I've searched for songs.
>
> \* \* \* \* \* \* \*
>
> Q: Do you remember downloading anything off of Ares at all?
>
> A: I would believe that I did because if the program was there, I would imagine that I did use it for that.
>
> \* \* \* \* \* \* \*
>
> Q: And so basically you just thought there just – generally there was music out there that you could access and download?
>
> A: Yes.
>
> \* \* \* \* \* \* \*

Q: Was the only thing you downloaded on Ares, would that have been music?

A: For the most part, yes.

\* \* \* \* \* \* \*

Q: And did you . . . did you search Ares for any particular music?

A: Specifically I can't remember.

Q: Generally?

A: Generally, yes.

\* \* \* \* \* \* \*

Q: Do you recall specifically what you would need to do in order to download?

A: I don't know – I don't remember the specifics as far as anything. From what I can remember it was just as easy as searching.

\* \* \* \* \* \* \*

Q: I don't need to get into the specifics, just generally speaking would you have downloaded some of the [Copyrighted Recordings]?

A: Yes.

\* \* \* \* \* \* \*

Q: . . . are you aware now that others would have been uploading CDs to their shared folders and that's where you were accessing those songs from?

A: Yes, I somewhat understand that now.

\* \* \* \* \* \* \*

Q: And you were aware that by downloading those songs from Ares, that you were doing so for free and not paying for them?

A: Yes.

(Walker Depo., pp. 68-69, 71-72, 76, 81, 84, 93, 96). Plaintiffs have further provided evidence that the metadata associated with 17 of the 19 Copyrighted Recordings contained user-added comments and keywords that would not have been contained in legitimately purchased copies of those audio files. Defendant admits that he had "no knowledge of what [metadata] even was or how to access [it]" and that he "never put in extra information" such as comments and keywords. (Walker Depo., pp. 41-42). Given that neither the copyright owners nor Defendant placed those comments in the metadata, those comments could only have been inserted into the metadata by other Ares' users from whom Defendant downloaded the files. See Alburger, 2009 WL 3152153, *2 (noting that "[t]he metadata collected by MediaSentry contained user comments attached to some of the audio files; however, Defendant states that he does not know how to add comments.").

Despite Defendant's admission that he used Ares to download copyrighted recordings, he contends in his Brief in Opposition that "it is possible one of the many third parties with access to [Defendant's] computer downloaded the Recordings." (Brief in Opposition, p. 10). However, at deposition, Defendant could not recall an instance where another individual used his computer, nor does he suggest any possible reason why an individual would download music for personal use onto *someone else's* computer. (Walker Depo., pp. 50-51, 56). Defendant admits that his roommates each had their own computers and that he never willingly gave them access to his own. (Walker Depo., pp. 43, 50). It is well-established that a party cannot escape summary judgment by relying "merely upon bare assertions, conclusory allegations or suspicions." See, e.g., Firemen's Ins., 676 F.2d at 969. Here, as previously discussed, Defendant admitted at deposition to downloading Defendant's Copyrighted Recordings. His contention that others may have utilized his computer to download copyrighted files is conclusory and speculative. I find that Defendant has failed to raise a triable issue of fact as to the identity of the individual who downloaded the 19 Copyrighted Recordings.[3]

---

[3] Given Defendant's admissions at deposition relative to downloading Plaintiffs'
(continued...)

### D.      Unauthorized Distribution Pursuant to Section 106(3)

As an alternative basis for infringement, Plaintiffs contend that Defendant also violated the Copyright Act by *distributing* the Copyrighted Recordings without authorization. See 17 U.S.C. § 106(3). It is undisputed that MediaSentry downloaded actual copies of nine of the Copyrighted Recordings from Defendant's computer, establishing unauthorized distribution as to those nine recordings. (Connelly Decl. ¶ 9; Connelly Decl., Ex. B). See Capital Records v. Thomas, 579 F.Supp.2d 1210, 1216 (D. Minn. 2008) (holding that "distribution to MediaSentry can form the basis of an infringement claim"); Atlantic Recording Corp. v. Howell, 554 F.Supp.2d 976, 985 (D. Ariz. 2008) (holding that "'[T]he investigator's assignment was part of the [recording companies'] attempt to stop [the defendant's] infringement,' and therefore the 12 copies obtained by MediaSentry are unauthorized.").[4] As to the other ten files, however, Plaintiffs attempt to establish unauthorized distribution primarily on the basis that Defendant made those recordings *available* for distribution. Courts are sharply divided as to the viability of the so-called "making available" theory of liability. Compare Alburger, 2009 WL 3152153, *3 n. 41 ("[A]n individual violates the exclusive-distribution right by 'making available' that illegally downloaded work to other internet users. . . . There is no requirement that plaintiffs show that the files were actually downloaded by other users from Defendant, only that the files were available for downloading."), with Howell, 554 F.Supp.2d at 983 (collecting cases and noting a split in the caselaw before agreeing with the "great weight of authority

---

[3](...continued)
Copyrighted Recordings, the significance of the metadata discussed above, and the failure of Defendant to have produced evidence of third party use, Plaintiff has met its burden of demonstrating that Defendant was responsible for downloading all 19 of the Copyrighted Recordings.

[4]   Defendant cites Howell for the proposition that "courts have rejected MediaSentry's download of a copyrighted recording during a process of investigation on behalf of a Plaintiff record company as actual distribution." (Brief in Opposition, p. 12). In fact, Howell reached the opposite conclusion, holding that the 12 copyrighted sound recordings that were downloaded from defendant's computer by MediaSentry were unauthorized distributions in violation of the Copyright Act. Howell, 554 F.Supp.2d at 986.

that § 106(3) is not violated unless the defendant has actually distributed an unauthorized copy of the work to a member of the public"). Given the fact that Plaintiff has already established a right to recover statutory damages for each of the 19 Copyrighted Recordings on the basis that Defendant *copied* them without authorization, I find it unnecessary to reach the merits of Plaintiffs' alternative assertion that Defendant violated the Copyright Act by making the Copyrighted Recordings available to download.

### E. Damages and Relief

Section 504(c)(1) of the Copyright Act provides that a plaintiff may elect to collect statutory damages in lieu of actual damages once copyright infringement has been established. 17 U.S.C. § 504(c)(1). In seeking to collect a statutory damage award, plaintiffs need not provide evidence of actual damages. Id.; see also Alburger, 2009 WL 3152153, *4 (citing Fitzgerald Pub. Co., 807 F.2d at 1114). Here, Plaintiffs have elected to pursue statutory damages in the statutory minimum amount of $750 per violation.[5] Courts in this district "routinely award statutory damages in these types of copyright infringement cases." Alburger, 2009 WL 3152153, *4; see also, e.g., Frank Music Corp. v. Emerson's Pub, Inc., 2009 WL 744964 (M.D. Pa. 2009). I will award statutory damages in the minimum amount of $14,250, representing $750 for each of the nineteen violations.

Plaintiffs also seek a permanent injunction under Section 502 of the Copyright Act which states:

> Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

---

[5] Section 504(c)(1) authorizes statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just." Consequently, this Court lacks the discretion to impose a statutory fine less than the minimum of $750 per violation.

17 U.S.C. § 502(a).  In copyright cases, injunctive relief "is regularly provided to prevailing plaintiffs due to the ease of further violation and the insufficiency of legal remedies." Alburger, 2009 WL 3152153, *4 (citing Fonovisa, Inc. v. Merino, 2006 WL 3437563, *2 (D.N.J. 2006))

In determining whether injunctive relief is appropriate, "well-established principles of equity" require a court to consider the following factors: (1) whether Plaintiffs would face irreparable injury if the injunction did not issue, (2) whether Plaintiffs have an adequate remedy at law, (3) whether granting the injunction is in the public interest, and (4) whether the balance of the hardships tips in Plaintiffs' favor.  eBay inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006) (citing MercExchange, L.L.C. v. eBay, Inc., 275 F.Supp.2d 695 (E.D. Va. 2003)).  In evaluating these equitable factors in the unique context of online infringement, courts have acknowledged "the possibility that future activity on a peer-to-peer network may lead to exponential infringement," the fact that "online infringement is easy to accomplish, but difficult to detect," and the "difficulty of measuring damages." See Capitol Record, Inc. v. Thomas-Rasset, 2010 WL 291763, *11-13 (D.Minn. 2010); Lava Records, LLC v. Ates, 2006 WL 1914166, *4 (W.D. La. 2006) (finding that "a permanent injunction is appropriate because of the strong public interest in copyright protection; the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a damage award that may or may not be collectible; and the need to deter future infringement by Defendant and others."); BMG Music v. Gonzalez, 430 F.3d 888, 893 (7th Cir. 2005) (upholding a permanent injunction in a peer-to-peer infringement case "to ensure that the misconduct does not recur as soon as the case ends.").  Moreover, it is well-established that "the public interest is the interest in upholding copyright protections." Autoskill Inc. v. Nat'l Educ. Support Sys., 994 F.2d 1476, 1499 (10th Cir. 1993); see also Elektra Ent'mt Group, Inc. v. Carter, 618 F.Supp.2d 89, 94 (D. Maine 2005) (noting that "it is virtually axiomatic that the public interest can only be served by upholding copyright protections") (quoting Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611 (1st Cir. 1988)).  Finally, "the balance [of hardships] weighs strongly in favor of [an injunction]

where all that is requested is that Defendant comply with the Copyright Act." Ates, 2006 WL 1914166, *4.

Having fully considered each of the four factors described above, I find that injunctive relief is appropriate here. The following injunction will be entered:

> Defendant is hereby enjoined from infringing Plaintiffs' rights under federal law in the Copyrighted Recordings, including without limitation by using Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Copyrighted Recordings, to distribute (i.e., upload) any of Plaintiffs' Copyrighted Recordings, or to make any of Plaintiffs' Copyrighted Recordings available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs. Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

Finally, Section 505 of the Copyright Act authorizes recovery of "full costs" of the suit, as well as attorney's fees. 17 U.S.C. § 505. An award of costs is routinely granted pursuant to Section 505 in order to "(1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party." A&N Music Corp. v. Venezia, 733 F.Supp. 955, 959 (E.D. Pa. 1990). Whether to grant an award of costs is within the court's discretion. 17 U.S.C. § 505; Alburger, 2009 WL 3152153, *4 (citing Lieb v. Topstone Indus., 788 F.2d 151, 155-56 (3rd Cir. 1986)).

Here, Plaintiffs request $350 in costs. Finding the request reasonable, costs will be assessed in that amount.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' motion for summary judgment is granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARNER BROS. RECORDS INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | C.A. No. 07-287 Erie |
| ) | District Judge McLaughlin |
| JEREMY WALKER, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

AND NOW, this 31st day of March, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED and this action is DISMISSED. Judgment is entered in favor of Plaintiffs and against Defendant in the amount of $14,600 representing the total of the minimum statutory damages in the amount of $14,250 and costs in the amount of $350.

IT IS FURTHER ORDERED that the following permanent injunction shall be entered against Defendant:

> Defendant is hereby enjoined from infringing Plaintiffs' rights under federal law in the Copyrighted Recordings, including without limitation by using Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Copyrighted Recordings, to distribute (i.e., upload) any of Plaintiffs' Copyrighted Recordings, or to make any of Plaintiffs' Copyrighted Recordings available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs. Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___